**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENISE REDFIELD,<br><br>Plaintiff,<br><br>v.<br><br>STONEMOR INC., JOSEPH M. REDLING, ANDREW AXELROD, SPENCER E. GOLDENBERG, DAVID MILLER, STEPHEN NEGROTTI, KEVIN PATRICK, and PATRICIA WELLENBACH,<br><br>Defendants. | Case No. ___________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 25, 2022 (the "Proposed Transaction"), pursuant to which StoneMor, Inc. ("StoneMor" or the "Company") will be acquired by Axar Cemetery Parent Corp. ("Parent") and Axar Cemetery Merger Corp. ("Merger Sub").

2. On May 24, 2022, StoneMor's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Merger Sub. Pursuant to the terms of the Merger Agreement StoneMor's stockholders will receive $3.50 in cash for each share of StoneMor common stock they own.

3. On August 5, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of StoneMor common stock.

9. Defendant StoneMor is a Delaware corporation and a party to the Merger Agreement. StoneMor's principal executive offices are located at 331 Street Road, Suite 200, Bensalem, Pennsylvania 19020. StoneMor's common stock is traded on the NYSE, which is

headquartered in New York, New York, under the ticker symbol "STON."

10. Defendant Andrew Axelrod is Chairman of the Board.

11. Defendant Joseph M. Redling is President, Chief Executive Officer, and a director of the Company.

12. Defendant Spencer E. Goldenberg is a director of the Company.

13. Defendant David Miller is a director of the Company.

14. Defendant Stephen Negrotti is a director of the Company.

15. Defendant Kevin Patrick is a director of the Company.

16. Defendant Patricia Wellenbach is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

18. StoneMor is an owner and operator of cemeteries and funeral homes in the United States, with 304 cemeteries and 72 funeral homes in 24 states and Puerto Rico.

19. On May 24, 2022, StoneMor's Board caused the Company to enter into the Merger Agreement.

20. Pursuant to the terms of the Merger Agreement, StoneMor's stockholders will receive $3.50 in cash per share.

21. According to the press release announcing the Proposed Transaction:

> StoneMor Inc. (NYSE: STON) ("StoneMor" or the "Company"), a leading owner and operator of cemeteries and funeral homes, today announced that it has entered into a definitive merger agreement under which a subsidiary of Axar Capital Management, LP ("Axar") will be merged with and into StoneMor and all outstanding shares of StoneMor common stock not owned by Axar as to which dissenters' rights are not perfected will be converted into the right to receive $3.50

in cash per share. Axar currently owns approximately 75% of the outstanding shares of StoneMor common stock. The cash consideration represents a 54.2% premium to the Company's closing share price on May 24, 2022, the last trading day prior to today's announcement of the execution of a definitive merger agreement.

The agreement was entered into following receipt of a proposal by Axar on September 22, 2021 in which Axar expressed an interest in pursuing discussions concerning strategic alternatives that might be beneficial to the Company and its various stakeholders. The transaction was negotiated on behalf of StoneMor by the Conflicts Committee of its Board of Directors, which is comprised entirely of independent directors, with the assistance of independent financial and legal advisors. Following the Conflicts Committee's unanimous recommendation, StoneMor's Board of Directors approved the merger agreement and has recommended that StoneMor's stockholders adopt and approve the merger agreement and the merger.

"Our agreement with Axar delivers a significant premium for StoneMor's stockholders and ensures a strong foundation for us to continue our expansion," said Joe Redling, President and Chief Executive Officer. "Our Board firmly believes that this transaction is in the best interests of all of our stockholders other than Axar and its affiliates and delivers an ongoing commitment to excellence for our customers, employees and communities we serve."

The agreement provides for a "go-shop" period during which the Conflicts Committee (acting through its financial advisor) will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. The "go-shop" period is 60 days subsequent to signing of the Merger Agreement, ending July 23, 2022. There can be no assurance that this "go-shop" process will result in a superior proposal, particularly in light of Axar's ownership position and the fact that Axar has no obligation to support any such superior proposal. StoneMor does not intend to disclose developments with respect to the solicitation process unless and until its Conflicts Committee and the Board of Directors has made a decision with respect to any potential superior proposal. The Company will pay Axar a termination fee in certain circumstances, including a fee equal to 2% of the aggregate value of the non-Axar shares if the Company terminates the agreement during the "go-shop" period to enter into a superior proposal that Axar supports, and a fee equal to 4% of the aggregate value of the non-Axar shares if the Company terminates the agreement after the "go-shop" period to enter into a superior proposal that Axar supports. No termination fee is payable if the Company terminates the agreement upon a change of recommendation in connection with a superior proposal that is not supported by Axar.

The merger is subject to approval by holders of a majority of the outstanding common stock of StoneMor and in addition, requires the approval by the holders of a majority of the outstanding common stock of StoneMor not owned by Axar or any of StoneMor's directors or executive officers or members of their immediate

> families. Axar has agreed to vote the shares of StoneMor common stock it owns in favor of the merger agreement. The merger agreement is also subject to customary closing conditions. Axar has fully committed financing and the transaction is not subject to a financing condition.
>
> Subject to satisfaction of the conditions to closing, the transaction is currently expected to close in the fall of 2022. If the transaction is completed, StoneMor will become a privately held company and its stock will no longer trade on the New York Stock Exchange.
>
> Duff & Phelps, now rebranded as Kroll, is serving as financial advisor and Faegre Drinker Biddle & Reath LLP is serving as legal counsel to the Conflicts Committee. Houlihan Lokey is serving as financial advisor and Schulte Roth & Zabel LLP is serving as legal counsel to Axar. Duane Morris LLP is serving as legal counsel to the Company.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

22. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

23. As set forth below, the Proxy Statement omits material information.

24. First, the Proxy Statement omits material information regarding the Company's financial projections.

25. The Proxy Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

27. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Duff & Phelps.

28. With respect to Duff & Phelps' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values of the Company; (ii) the individual inputs and assumptions underlying the discount rates and terminal growth rate used in the analysis.

29. With respect to Duff & Phelps' Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies.

30. With respect to Duff & Phelps' Selected Mergers and Acquisitions Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions.

31. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

32. Third, the Proxy Statement fails to disclose whether the Company entered into any nondisclosure agreements that contained standstill and/or "don't ask, don't waive" provisions.

33. Fourth, the Proxy Statement fails to disclose the timing and nature of all communications regarding post-transaction employment, directorships, and benefits, including who participated in all such communications.

34. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and StoneMor

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. StoneMor is liable as the issuer of these statements.

38. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

39. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

41. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of StoneMor within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of StoneMor and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 24, 2022

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*

Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*